975 So.2d 1001 (2007)
J.K.L.B. FARMS, LLC,
v.
Donald L. PHILLIPS and Dana H. Phillips.
2060190.
Court of Civil Appeals of Alabama.
June 15, 2007.
*1003 James R. Bussian and Robert H. Fowlkes of Maynard, Cooper & Gale, P.C., Birmingham, for appellant.
Thomas B. Prickett II, Oneonta, for appellees.
THOMPSON, Presiding Judge.
This is the second time these parties have been before this court.
The record indicates that in 1998 J.K.L.B. Farms, LLC ("J.K.L.B."), purchased land that shares a boundary with land owned by Donald L. Phillips and Dana H. Phillips (hereinafter together referred to as "the Phillipses"); the land owned by J.K.L.B. is to the north of the land owned by the Phillipses.
In 2000, J.K.L.B. entered into an agreement to sell a parcel of its property to Robert A. Petty. On September 15, 2000, before the close of the real-estate transaction, Petty and his wife placed a mobile *1004 home[1] on the parcel Petty was to purchase from J.K.L.B. Three days later, on September 18, 2000, the Phillipses sued J.K.L.B. seeking to establish the boundary between the properties and seeking damages on a claim alleging trespass. According to the affidavit of James Thomas, a member of J.K.L.B., as a result of the 2000 litigation, J.K.L.B. and Petty did not complete their proposed real-estate transaction. Although the real-estate transaction was never completed, the mobile home was never removed from the parcel that Petty had planned to purchase.
On July 8, 2003, the trial court entered a judgment finding in favor of the Phillipses and determining that the boundary between the parties' properties was established by a survey upon which the Phillipses had relied. The survey upon which the trial court relied in reaching its July 8, 2003, judgment revealed that a small portion of Petty's mobile home was located across the boundary between the parties' properties and, therefore, that that portion of the mobile home constituted a trespass to the Phillipses' property. It also appears that another structure, perhaps a septic tank,[2] appurtenant to Petty's mobile home also trespassed upon the property owned by the Phillipses. In addition to determining the boundary line between the parties' properties, in its July 8, 2003, judgment, the trial court ordered J.K.L.B. to remove structures that were located on what it had determined to be the Phillipses' property and to pay the Phillipses $5,000 in damages for the trespass.
J.K.L.B. appealed the July 8, 2003, judgment to this court. In that appeal, J.K.L.B. argued only that the trial court's determination of the boundary line between the parties' properties was not supported by the evidence in the record. On October 15, 2004, this court affirmed the trial court's July 8, 2003, judgment, without an opinion. See J.K.L.B. Farms v. Phillips (No. 2030237, Oct. 15, 2004), 921 So.2d 477 (Ala.Civ.App.2004) (table).
On August 4, 2006, the Phillipses filed a petition for a rule nisi in which they alleged that J.K.L.B. had failed to comply with the terms of the July 8, 2003, judgment and in which they sought a determination that J.K.L.B. was in contempt based on its failure to comply with the July 8, 2003, judgment. Specifically, the Phillipses alleged that J.K.L.B. had failed to remove the structures referenced in the July 8, 2003, judgment.[3] J.K.L.B. answered and moved that the trial court determine that the July 8, 2003, judgment had been satisfied. On October 11, 2006, the trial court entered a judgment in favor of the Phillipses on their petition for a rule nisi and ordered J.K.L.B. to remove the structures within 30 days. J.K.L.B. again appealed.
In this appeal, J.K.L.B. argues, as it did before the trial court, that it has satisfied the July 8, 2003, judgment to the extent that it is possible for it to do so. The July *1005 8, 2003, judgment provides, in pertinent part:
"The Court finds that [J.K.L.B.] has placed structures south of the boundary line as set out herein, and thus has trespassed on the property of the [Phillipses]. [J.K.L.B.] shall be allowed 60 days from the date of this order to remove said structures from the [Phillipses'] land. The Court further finds that the [Phillipses] have been damaged by [J.K.L.B.'s] trespass in the amount of $5,000. It is ORDERED, ADJUDGED and DECREED that [the Phillipses] have and recover [from J.K.L.B.] the sum of $5,000."
J.K.L.B. argues in this appeal that the trial court erred in reaching its October 11, 2006, judgment without adding Petty[4] as a party; J.K.L.B. also includes a similar, but cursory, assertion regarding the July 8, 2003, judgment. In making those assertions, J.K.L.B. maintains that Petty is an indispensable party and that the failure to join him as a party rendered the trial court's judgments void. See Rule 19, Ala. R. Civ. P.J.K.L.B. did not seek relief in the trial court on this basis, and it asserts this theory for the first time in this appeal.
In arguing that Petty was an indispensable party to the underlying rule nisi proceeding that resulted in the October 11, 2006, judgment, J.K.L.B. cites Crum v. SouthTrust Bank of Alabama, N.A., 598 So.2d 867, 870 (Ala.1992), for the proposition that the failure to join an indispensable party may be raised for the first time on appeal. In its brief submitted to this court, J.K.L.B. does not advance any argument that the July 8, 2003, judgment or this court's affirmance of that judgment were void. Thus, with regard to the initial proceeding that resulted in the July 8, 2003, judgment, J.K.L.B. has not properly raised the issue whether Petty was an indispensable party to that proceeding, an issue that J.K.L.B. raises for the first time in this appeal of the October 11, 2006, judgment. However, as the dissent points out, the issue of the failure to join an indispensable party may also be raised by an appellate court ex mero motu. See id.
Even if we were to accept the argument that Petty was an indispensable party to the rule nisi proceeding,[5] we note that the fact that an indispensable party was not joined in the litigation does not *1006 necessitate the dismissal of the litigation or the appeal. J.R. McClenney & Son, Inc. v. Reimer, 435 So.2d 50, 52 (Ala.1983). If a person who should have been joined as a party to an action was not joined, Rule 19(b), Ala. R. Civ. P., dictates that the courts consider "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed." Thus, the determination whether to dismiss this appeal or to reverse the October 11, 2006, judgment on the basis that this appeal has been taken from a judgment that is void for the failure to join an indispensable party must be made through the application of equitable principles. See J.R. McClenney & Son, Inc. v. Reimer, 435 So.2d at 52 (quoting Wright & Miller & Kane, Federal Practice and Procedure, Civil § 1611 (1972)) ("`[b]ecause the doctrine of indispensable parties is equitable in character, the court will not dismiss for nonjoinder when special circumstances would make it inequitable to do so.'"); see also Hodge v. State, 643 So.2d 982 (Ala.Civ.App.1993); Felder v. State, 515 So.2d 17 (Ala.Civ.App.1987).
Rule 19(b) sets forth a number of factors to be considered in determining whether it would be equitable or in good conscience for a court to dismiss an action for the failure to join an indispensable party:
"The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."
With regard to the prejudice factor, our supreme court has held that
"[w]here it is apparent that in raising the joinder issue a party is seeking only to protect itself and not to vicariously protect the absent party against a prejudicial judgment, this Court, in determining the possible prejudice to the party seeking relief, may property consider that party's delay in seeking the joinder of the absent party. See Byrd Companies, Inc. v. Smith, 591 So.2d 844 (Ala. 1991) (`A defendant's delay and its selfserving purpose for raising the issue have also been held to be proper considerations in determining whether a judgment is proper in the absence of a particular party.')."
Jamison, Money, Farmer & Co. v. Standeffer, 678 So.2d 1061, 1068 (Ala.1996).
In this case, the initial judgment was entered in 2003, and this court affirmed that judgment in 2004. J.K.L.B. complied with only a portion of the 2003 judgment, and in August 2006 the Phillipses filed their petition for a rule nisi seeking to enforce the 2003 judgment. J.K.L.B. has not asserted that it attempted to comply with all of the requirements of the 2003 judgment. In fact, in late 2006, J.K.L.B. first raised its arguments that it has "satisfied" the July 8, 2003, judgment. In seeking a declaration that the October 11, 2006, judgment was void, J.K.L.B. advocates a position that further delays the removal of the trespassing structures from the Phillipses' property. Further, it is clear that Petty had knowledge of at least the initial litigation concerning the trespass because that litigation resulted in the cancellation of his purchase of the parcel of property from J.K.L.B. However, Petty did not seek and has not sought to protect any interest he might have had in that litigation or in the later, 2006 rule nisi proceedings.
*1007 In Geer Brothers, Inc. v. Walker, 416 So.2d 1045 (Ala.Civ.App.1982), the defendant raised for the first time in a posttrial motion its argument that certain indispensable parties had not been properly joined. One of those parties, a bank, had not attempted at any point to protect its interest in the litigation. Taking into consideration the failure of the bank to attempt to protect its interests and the lateness of the defendant's argument that the bank was an indispensable party, our supreme court affirmed the denial of the defendant's posttrial motion. In so holding, the court concluded, in part, that it could not say in equity and good conscience that the bank's absence from the litigation was so prejudicial as to necessitate a new trial. Geer Bros., Inc. v. Walker, 416 So.2d at 1050.
In J.R. McClenney & Son, Inc. v. Reimer, supra, the defendant in a boundary-line dispute first argued that its mortgagee was an indispensable party after the expiration of the time for appealing the final judgment in the boundary-line litigation. The defendant filed a motion in the trial court seeking relief from the final judgment pursuant to Rule 60(b), Ala. R. Civ. P. The trial court denied the Rule 60(b) motion, citing the conduct of the defendant in raising the issue of nonjoinder at that late date while having had knowledge of the status of the mortgagee from the outset of the litigation. On appeal, our supreme court affirmed, concluding that the defendant was estopped by its own conduct from raising the issue of the failure to join an indispensable party after the expiration of the time for appealing the original judgment. The court concluded that "it would be inequitable to vacate this judgment on motion of the defendant, which has so blatantly ignored the rules under which its mortgagee bank could have so easily been made a party." J.R. McClenney & Son, Inc. v. Reimer, 435 So.2d at 52.
In this case, the Phillipses sought relief from the trespass within three days of the encroachment of the mobile home onto their property in 2000. J.K.L.B. waited to assert its argument that Petty was an indispensable party until it filed its brief in this court more than three years after the 2003 trial and judgment, and over six years after the encroachment had first occurred. During the time the parties have been engaged in litigation, Petty, who has had knowledge of at least the original proceedings below, has not made any effort to protect any interest of his in this litigation. The question whether an action may proceed without an indispensable party is "particularly important when a judgment has already been rendered without the nonjoined [person]." Jamison, Money, Farmer & Co. v. Standeffer, 678 So.2d at 1067. Given the facts of this case and caselaw precedent, we cannot say that equity or good conscience dictate that the October 11, 2006, judgment be declared void for failure to join Petty as an indispensable party. Geer Bros., Inc. v. Walker, supra; J.R. McClenney & Son, Inc. v. Reimer, supra.
As noted earlier in this opinion, J.K.L.B. does not assert a properly supported argument with regard to whether Petty was an indispensable party to the proceedings that resulted in the July 8, 2003, judgment. However, the dissent advocates that this court, ex mero motu, should reverse the October 11, 2006, judgment. "`The absence of a necessary and indispensable party necessitates the dismissal of the cause without prejudice or a reversal with directions to allow the cause to stand over for amendment.'" Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1022 (Ala.2003) (quoting J.C. Jacobs Banking Co. v. Campbell, 406 So.2d *1008 834, 850-51 (Ala.1981)). Therefore, we think it prudent to briefly address, ex mero motu, whether the July 8, 2003, judgment was void for the failure to join an indispensable party. See Horizons 2000, Inc. v. Smith, 620 So.2d 606, 607 (Ala.1993) (quoting Insurance Mgmt. & Admin., Inc. v. Palomar Ins. Corp., 590 So.2d 209, 212 (Ala.1991)) ("`If the judgment is valid, it must stand; if it is void, it must be set aside.'"). In this case, J.K.L.B. had knowledge of Petty's status as a purportedly indispensable party, and, with regard to the July 8, 2003, judgment, J.K.L.B. has never developed an argument that that judgment should be declared void for failure to join Petty. Given the facts and the holdings of Geer Brothers, Inc. v. Walker, supra, and J.R. McClenney & Son, Inc. v. Reimer, supra, we conclude that the July 8, 2003, judgment, like the October 11, 2006, judgment, was not void for the failure to join Petty as an indispensable party.
J.K.L.B. also contends that because it does not own Petty's mobile home or the appurtenant structure, it does not have the authority or the ability to remove them from the Phillipses' property. J.K.L.B. cites Devenish v. Phillips, 743 So.2d 492 (Ala.Civ.App.1999), in which Devenish obtained a judgment against the defendants for damages for the trespass on his property caused by a retaining wall erected by the defendants; that retaining wall encroached on Devenish's property. Later, Devenish again sued the defendants, alleging a continuing trespass. The trial court entered a summary judgment in favor of the defendants, concluding that they were not proper parties because neither defendant owned the land at the time of the second action. This court affirmed on the basis of res judicata. In dicta, this court also noted that the defendants no longer owned the property or the retaining wall and that it "[could] not order [the defendants] to enter the property of another and tear down a wall Devenish alleges to be causing his injury." Devenish v. Phillips, 743 So.2d at 495.
In this case, however, J.K.L.B. still owns the parcel of property on which most of at least one of the trespassing structures is located, and the Phillipses, who want the structures removed, own the property on which the structures are trespassing. Thus, J.K.L.B. is not required to enter another person's or entity's property in order to remove the trespassing structures.
Also, J.K.L.B. argued before the trial court that it has complied with the July 8, 2003, judgment to the extent to which it has the authority to do so. Thus, it asserted before the trial court its defense that it was unable to comply with the July 8, 2003, judgment. Stamm v. Stamm, 922 So.2d 920, 924 (Ala.Civ.App.2004) ("[T]he inability to comply with the trial court's judgment is a valid defense in contempt proceedings."). The trial court, after hearing the arguments of counsel, rejected that defense. The burden is on the party accused of contempt to demonstrate its inability to comply with the trial court's judgment; the burden shifts only after the accused party presents sufficient evidence of lack of ability to comply with the trial court's judgment. Carr v. Broyles, 652 So.2d 299, 301-02 (Ala.Civ.App.1994); Hitson v. Hitson, 412 So.2d 798, 800 (Ala.Civ. App.1982).
In this case, the only evidence J.K.L.B. presented in support of its defense of inability to comply with the trial court's July 8, 2003, judgment was James Thomas's affidavit. In that affidavit, Thomas stated that J.K.L.B. does not own the mobile home and that the proposed sale of the property to Petty was not completed. The affidavit does not state that *1009 J.K.L.B. has made any attempt to move the trespassing structures in compliance with the July 8, 2003, judgment or that Petty objects to or has objected to any attempt to remove the structures from the Phillipses' property. Although the trial court did not receive ore tenus evidence,[6] the trial court could have, based on arguments of counsel and the limited evidence presented, concluded that J.K.L.B. did not meet its initial burden of establishing a defense to the Phillipses' rule nisi petition based on its alleged inability to remove the trespassing structures.
The doctrine of the law of the case also leads this court to reject J.K.L.B.'s argument that because it does not own the trespassing structure or structures, it cannot remove them as is required by the July 8, 2003, judgment. "Under the doctrine of the `law of the case,' whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case. Alford v. Summerlin, 423 So.2d 482 (Fla. Dist.Ct.App.1982)." Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987). "`In the words of Justice Holmes, the doctrine of the law of the case "merely expresses the practice of courts generally to refuse to reopen what has been decided. . . ." Messinger v. Anderson, 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912) (emphasis added [in Bagley ex rel. Bagley v. Creekside Motors, Inc., 913 So.2d 441, 445 (Ala.2005)]).'" G.E.A. v. D.B.A., 920 So.2d 1110, 1115 (Ala.Civ.App.2005).
In the July 8, 2003, judgment, the pertinent portion of which is quoted earlier in this opinion, the trial court found that J.K.L.B. "ha[d] placed structures south of the boundary . . . and, thus, ha[d] trespassed on" the Phillipses' property. (Emphasis added.) In addition to specifying a time by which J.K.L.B. was to remove the trespassing structures, the trial court determined that the Phillipses had "been damaged by [J.K.L.B.'s] trespass," and it awarded the Phillipses damages. (Emphasis added.) Thus, the trial court's July 8, 2003, judgment determined that J.K.L.B. had placed the trespassing structures on the Phillipses' property and that that action constituted a trespass that had damaged the Phillipses. We note that J.K.L.B. paid the Phillipses the damages awarded by the trial court for the damage to their property caused by J.K.L.B.'s trespass to the property.
The trial court's October 11, 2006, judgment indicates that it considered the doctrine of the law of the case. That judgment provides:
"The verified Petition for Rule Nisi heretofore filed in this cause by the Plaintiff, Donald L. Phillips and wife, Dana H. Phillips, having been read and considered by the Court, and argument having been heard thereon on October 6, 2006, it appears to the Court as follows:
"The presence of the mobile home was mentioned in both the Deposition of Frank S. Hollis taken on February 1, 2002, and Scott Hamm taken on January 17, 2002, and both depositions indicate that the line went through the mobile home. J.K.L.B. Farms entered into a contract with Robert Petty for the sale of lot # 2-8 in the lost mountain subdivision on July 10, 2000. A part of lot #2-8 *1010 was, in fact, not owned by J.K.L.B. Farms. In [J.K.L.B.'s] response, Exhibit `B', James Thomas states that `because the lawsuit was filed, J.K.L.B. and the [Pettys] have not closed on the lot.' The mobile home was set up on the lot on September 15, 2000, and this lawsuit was filed September 18, 2000. J.K.L.B. has had knowledge that a part of the mobile home was over the property line on the Phillipses' property.
"This Court's Order of [July 8,] 2003, found that the Defendant, J.K.L.B. Farms, had placed structures south (on the Phillipses' side) of the boundary line as set out in the judgment, and allowed [J.K.L.B.] sixty (60) days to remove said structures from the Phillipses' land. The Court ordered the placement of Judicial Markers to indicate the location of the true boundary line, and said markers have been placed. As of October 6, 2006, said structures have not been removed from the Phillipses' land.
"It is ORDERED, ADJUDGED AND DECREED as follows:
"The Court finds that the Defendant, J.K.L.B. Farms, is presently in contempt of the Court's Order of [July 8], 2003.
"That the Defendant, J.K.L.B. Farms, shall forthwith remove the mobile home and all connected and/or related structures from the Phillipses' land within 30 days from the date of this Order, or, failing therein, pay the sum of $500 per day until said structures are removed for contempt of the Order of this Court."
In its October 11, 2006, judgment, the trial court relied on the fact that its July 8, 2003, judgment had required J.K.L.B. to remove the structures and that, at that time, J.K.L.B. clearly had knowledge that it did not own the structures. As stated earlier, the only issue J.K.L.B. raised in its appeal of the July 8, 2003, judgment was whether the evidence supported the trial court's determination of the boundary line; in its first appeal, J.K.L.B. did not raise an argument pertaining to its right or ability to remove the structures, nor did it contend that it had not trespassed on the Phillipses' property. Thus, J.K.L.B. waived those arguments. See Robino v. Kilgore, 838 So.2d 366, 370 (Ala.2002) (when the appellant's brief did not assert an argument that the trial court had erred in entering a default judgment against the appellant, the appellant had waived that argument); see also Pardue v. Potter, 632 So.2d 470, 473 (Ala.1994) ("Issues not argued in the appellant's brief are waived."). Also, "[t]he facts upon which the [July 8, 2003,] decision was made continu[e] to be the facts of the case." Blumberg v. Touche Ross & Co., 514 So.2d at 924. Accordingly, the factual findings and legal conclusions that compose the July 8, 2003, judgment became the law of this case. Blumberg v. Touche Ross & Co., supra. See also Devenish v. Phillips, 743 So.2d at 493 n. 1 (refusing to address the issue whether the defendants were proper parties to the initial action when the parties had failed to appeal the judgment entered against the defendants in the first action). Likewise, for the same reasons, we reject J.K.L.B.'s argument that it could not comply with the July 8, 2003, judgment because that judgment was "vague." We cannot say that J.K.L.B. has demonstrated that the trial court erred in ordering it to comply with that portion of the July 8, 2003, judgment requiring it to remove the structures that trespass on the Phillipses' property.
J.K.L.B. next argues that even if the trial court had the authority to order it to *1011 remove the trespassing structures, it could not remove Petty's mobile home because, J.K.L.B. contends, that structure is a permanent fixture.[7] However, in making that argument, J.K.L.B. addresses only the provision of the October 11, 2006, judgment that requires J.K.L.B. to pay the Phillipses $500 per day for each day after the 30 days in which J.K.L.B. was to remove the trespassing structures.[8]
In arguing that it could not be ordered to pay damages for an act it argues it could not perform because the structures are purportedly "fixtures," J.K.L.B. again relies on Devenish, supra. J.K.L.B. maintains that, with regard to the purported permanent fixtures on the property, the Phillipses could maintain only one, but not successive, trespass actions. In Devenish, supra, this court held that although the encroachment at issue in that case was a continuing trespass, Devenish could not prevail because he had received a previous judgment in his favor on the same claim he was asserting in the action then before the court.
"[O]ne remedy for a continuing trespass is a permanent injunction, which, in the present case, could provide a removal of the encroachment. However, money damages could also be appropriate. Devenish did not seek an injunction in his first action. He asked for and received money damages. Devenish's second lawsuit is a result of his not asking for appropriate relief or for not suing for enough money the first time, not because of some new injury. The facts of this case show a single encroachment resulting in harm, not a continuous *1012 wrong involving new harm to the property on each occasion."
Devenish v. Phillips, 743 So.2d at 494.
The facts of this case are distinguishable from those of Devenish v. Phillips, supra. In Devenish, supra, the plaintiff sued a second time seeking money damages after he had recovered a monetary-damages award in the first judgment. In this case, the Phillipses sought and were awarded both monetary and injunctive relief. However, the Phillipses did not receive all the relief to which they were entitled as a result of the July 8, 2003, judgment because J.K.L.B. did not fully comply with that judgment. Accordingly, the Phillipses filed their petition for a rule nisi and sought the enforcement of the original judgment. The Phillipses have not asserted a second action as did the plaintiff in Devenish, supra.
For the reasons discussed below, we also reject J.K.L.B.'s contention that in their petition for a rule nisi the Phillipses impermissibly sought additional damages and the trial court erroneously granted that request. The trial court's award of $500 per day if J.K.L.B. does not timely comply with the October 11, 2006, judgment is not an award of additional damages. Rather that award is based on the trial court's finding of contempt. We find unpersuasive J.K.L.B.'s argument that the nature of the trial court's contempt finding, i.e., whether it was one for criminal or civil contempt, was unclear. It is clear that the trial court found J.K.L.B. in civil contempt for its failure or refusal to comply with the July 8, 2003, judgment. "The failure to perform an act required by the court for the benefit of an opposing party constitutes civil contempt." Carter v. State ex rel. Bullock County, 393 So.2d 1368, 1370 (Ala.1981). See also Rule 70A(a)(2)(D), Ala. R. Civ. P. (defining "civil contempt" as a "willful, continuing failure or refusal . . . to comply with a court's lawful . . . order . . . that by its nature is still capable of being complied with").
"Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." United States v. United Mine Workers of America, 330 U.S. 258, 303-04, 67 S.Ct. 677, 91 L.Ed. 884 (1947). Alabama courts have reiterated that a civil-contempt determination may be used to encourage a contemnor's future compliance with court orders. Chestang v. Chestang, 769 So.2d 294 (Ala.2000); Pate v. Guy, 934 So.2d 1070 (Ala.Civ.App.2005).
Thus, the foregoing authority establishes that a trial court may award damages on a claim alleging civil contempt in order to compensate the injured party and/or to encourage the contemnor's future compliance with court orders. United States v. United Mine Workers of America, supra; Chestang v. Chestang, supra; Carter v. State ex rel. Bullock County, supra; and Pate v. Guy, supra. Given J.K.L.B.'s continued failure to comply with the original, July 8, 2003, judgment, we cannot say that the trial court erred in deciding to award damages on the Phillipses' contempt claim. Accordingly, we must reject J.K.L.B.'s argument that the award of monetary damages to the Phillipses in the event J.K.L.B. does not timely comply with the October 11, 2006, judgment is an impermissible award under Devenish, supra.
We also affirm the trial court's determination of the amount of the contempt damages in the event J.K.L.B. continues to fail or refuses to comply with the trial court's judgments. J.K.L.B. has argued that there was no evidence presented to the trial court to support the amount of damages to be awarded in the event *1013 J.K.L.B. does not timely comply with the October 11, 2006, judgment. Before the trial court, the Phillipses sought an award of $300 per month as compensation for the use of the land upon which the structures continue to trespass; J.K.L.B. responded by arguing that the amount of land involved did not justify such an award. J.K.L.B.'s argument, however, ignores the other purpose of an award of damages on a finding of civil contempt: to coerce compliance with the trial court's orders and mandates.
"[W]here the purpose [of a contempt determination] is to make the defendant comply, the court's discretion is otherwise exercised. It must then consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.
"It is a corollary of the above principles that a court which has returned a conviction for contempt must, in fixing the amount of a fine to be imposed as a punishment or as a means of securing future compliance, consider the amount of the defendant's financial resources and the consequent seriousness of the burden to that particular defendant."
United States v. United Mine Workers of America, 330 U.S. at 304, 67 S.Ct. 677 (emphasis added; footnote omitted).
The trial court's award of damages for continued contempt is in excess of the amount the Phillipses claim would compensate them for the continued trespass to their property. However, it appears that the purpose of that award is not so much to compensate the Phillipses but to pressure J.K.L.B. to come into compliance with the terms of the trial court's judgments. An award of damages on a finding of civil contempt is within the discretion of the trial court. United States v. United Mine Workers of America, supra. Given J.K.L.B.'s continued failure, since 2003, to comply with the trial court's order that it remove the structures on the Phillipses' property, we cannot say that the trial court exceeded its discretion in fashioning its contempt award. See Pate v. Guy, 934 So.2d at 1072 ("[S]anctions for civil contempt . . . may continue indefinitely until the contemnor performs as ordered.").
AFFIRMED.
PITTMAN, BRYAN, and MOORE, JJ., concur.
THOMAS, J., dissents, with writing.
THOMAS, Judge, dissenting.
I believe that Robert A. Petty should have been made a party to the proceeding on the Phillips's rule nisi petition. Therefore, I would reverse the October 11, 2006, judgment holding J.K.L.B. in contempt and remand the cause to the circuit court with instructions that the court order Petty to be joined as a party. Rule 19(a), Ala. R. Civ. P., states, in pertinent part:
"A person who is subject to jurisdiction of the court shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties. . . . "
The main opinion points out that Petty has never sought to protect his own rights and questions whether it would be equitable to allow J.K.L.B. to assert, at this late date, that Petty should be joined as a party. The main opinion implies that J.K.L.B.'s late assertion has more to do with protecting J.K.L.B.'s own interests than with protecting Petty's interests. Although that implication may be justified, as a practical matter it appears that, in Petty's absence, the Phillipses cannot be afforded the complete relief to which they are entitled.
J.K.L.B. argues that Petty was an indispensable party to the contempt action because Petty is the owner of the trespassing *1014 structures that J.K.L.B. was ordered to remove  a mobile home and a septic system. J.K.L.B. maintains that it is unable to comply with the court's order to remove property that it does not own. "[T]he inability to comply with the trial court's judgment is a valid defense in contempt proceedings. See Gilbert v. Nicholson, 845 So.2d 785, 791 (Ala.2002); Ex parte Baker, 623 So.2d 304, 306 (Ala.Civ.App.1993); and Hill v. Hill, 562 So.2d 255, 257 (Ala.Civ. App.1990)." Stamm v. Stamm 922 So.2d 920, 924 (Ala.Civ.App.2004).
None of the decisions upon which the main opinion relies for its holding that one may be estopped by his own conduct to raise an issue with respect to Rule 19, Ala. R. Civ. P.  Jamison, Money, Farmer & Co. v. Standeffer, 678 So.2d 1061 (Ala. 1996); J.R. McClenney & Son, Inc. v. Reimer, 435 So.2d 50 (Ala.1983); and Geer Brothers, Inc. v. Walker, 416 So.2d 1045 (Ala.Civ.App.1982)  was a contempt case. None dealt with the absence of a necessary party as a defense to contempt.
In Devenish v. Phillips, 743 So.2d 492 (Ala.Civ.App.1999), this court stated that the trial court could not order a party to enter upon the property of another in order to dismantle an encroaching structure. The main opinion correctly points out that the statement in Devenish is dicta, but then it observes that because "J.K.L.B. still owns the parcel of property on which most of at least one of the trespassing structures is located, and the Phillipses, who want the structures removed, own the property on which the structures are trespassing[,]. . . . J.K.L.B. is not required to enter another . . . entity's property in order to remove the trespassing structures." 975 So.2d at 1008. That observation seems to ignore the legal and practical difficulties inherent in  and the potential breach of the peace that could be caused by  J.K.L.B.'s removing Petty's mobile home and towing it away, to say nothing of J.K.L.B.'s digging up Petty's septic system.
The main opinion also rejects J.K.L.B.'s argument  that because it does not own the trespassing structures it cannot move them  based on the doctrine of the law of the case. The July 8, 2003, judgment upon which the contempt action was based, however, established only the existence of trespassing structures upon the Phillipses' property; it did not establish J.K.L.B.'s ability to remove the structures. Granted, J.K.L.B. did not raise, before the contempt proceeding in 2006, its inability to remove the structures it does not own. However, because the failure to join an indispensable party is not subject to waiver and "can be raised for the first time on appeal by the parties or by the appellate court ex mero motu," J.C. Jacobs Banking Co. v. Campbell, 406 So.2d 834, 850 (Ala.1981) (quoted in Chicago Title Ins. Co. v. American Guar. & Liab. Ins. Co., 892 So.2d 369, 371 (Ala.2004)), J.K.L.B.'s failure to assert the Rule 19, Ala. R. Civ. P., issue earlier is not now a barrier to affording complete relief to the existing parties.
NOTES
[1] This structure is referred to in the record both as a "manufactured home" and as a "mobile home." In its judgment, the trial court refers to this structure as a "mobile home," and, accordingly, for the purposes of this opinion, we also refer to the structure as a "mobile home." As discussed later in this opinion, J.K.L.B. asserts that this structure is a manufactured home that is different in nature from a mobile home. See note 7, infra.
[2] The nature of the other trespassing structure or structures is not clear from the record. The parties refer to the existence of a septic tank and to the possibility that the septic-tank lines trespass on the Phillipses property.
[3] It is undisputed that J.K.L.B. paid the $5,000 in damages awarded under the July 8, 2003, judgment.
[4] The record does not indicate whether Petty's wife has any ownership interest in the mobile home. J.K.L.B. has not asserted any arguments with regard to Petty's wife. Accordingly, for the purposes of this opinion, we refer only to Petty in addressing J.K.L.B.'s arguments in this appeal.
[5] We do not necessarily agree that Petty is an indispensable party to the rule nisi proceeding. "There is no prescribed formula to be mechanically applied in every case to determine whether a party is an indispensable party or merely a proper or necessary one. This is a question to be decided in the context of the particular case." J.R. McClenney & Son, Inc. v. Reimer 435 So.2d 50, 52 (Ala. 1983). Our supreme court explained the distinction between an "indispensable party" and a "necessary party" by quoting the following from 1 Champ Lyons, Alabama Practice, Rules of Civil Procedure 389 (1973):

"`"Indispensable parties" are persons who not only have an interest in the controversy but an interest of such a nature that a final decree cannot be made without either affecting that interest or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience. Bennie v. Pastor, C.A.N.M.1968, 393 F.2d 1.
"`. . . .
"`"Necessary parties" are those affected by the judgment and against which in fact it will operate. West Coast Exploration Co. v. McKay, 1954, 93 U.S.App. D.C. 307, 213 F.2d 582, certiorari denied, 347 U.S. 989, 74 S.Ct. 850, 98 L.Ed. 1123.'"
J.R. McClenney & Son, Inc. v. Reimer, 435 So.2d at 52.
[6] J.K.L.B. has not argued that the trial court erred in failing to conduct an ore tenus hearing.
[7] In asserting that argument, J.K.L.B. briefly contends that because the Phillipses did not submit evidence in opposition to a statement in James Thomas's affidavit that the structure was a manufactured home and not a mobile home or trailer, that statement must be relied upon as undisputed evidence. We will not go so far as to say that the fact that a manufactured home is also known as a mobile home is a fact of such common knowledge that a trial court might take judicial notice of it. See Coral Gables, Inc. v. Patterson, 233 Ala. 602, 604, 173 So. 4, 6 (1937) ("Courts will take judicial notice of what is generally known within the limits of their jurisdiction."). However, with regard to J.K.L.B.'s "evidence" indicating that a manufactured home is not the same as a mobile home,

"we think that the trial judge was actually using a common-sense assumption based on everyday experience to help him make a credibility determination. `"In considering the weight to be given evidence, `courts and juries must use common sense, common reason, and common observation as well as a common knowledge of the usual acts of men and women under given circumstances.'"' Ashurst v. State, 462 So.2d 999, 1006 (Ala.Crim.App.1984) (quoting German v. State, 429 So.2d 1138, 1143 (Ala. Crim.App.1982))."
Patton v. Werner Co., 793 So.2d 817, 821 (Ala.Civ.App.2001).
Further, the trial court had heard the evidence presented in the 2000 litigation between the parties concerning the nature of the trespassing structures. It was not required to ignore that evidence in reaching its later judgment on the petition for a rule nisi. In that judgment, the trial court referred to the structure as a "mobile home." Accordingly, we reject J.K.L.B.'s argument that the trial court and this court must take as an established fact, at least for the purpose of this case, that the structure is a "manufactured home" that, purportedly by its nature, constitutes a permanent fixture on real property. In reaching this conclusion, we note that J.K.L.B. did not present evidence indicating, and the record does not indicate, that the specific characteristics of Petty's mobile home bring it within the definition of a "fixture."
[8] We reject J.K.L.B.'s argument that it is unclear to whom the damages should be paid in the event it fails to comply with the October 11, 2006, judgment. We find it implicit in the trial court's judgment that those damages, if they become due, are to be paid to the Phillipses.